IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANIEL HOLT § | | |
|     TDCJ NO. 1473850, § | | |
|         Plaintiff, § | | |
| § | | |
| v. § | | C.A. NO. C-07-406 |
| § | | |
| DR. QUAZI IMAM, § | | |
|         Defendant. § | | |

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Daniel Holt claims that Dr. Quazi Imam was deliberately indifferent to his serious medical needs when he altered plaintiff's medication regimen while he was confined in the Nueces County Jail . (D.E. 1). Defendant moves for summary judgment to dismiss plaintiff's claims (D.E. 50). For the reasons stated herein, defendant's motion is granted, and plaintiff's claims against Dr. Imam are dismissed with prejudice.

**I.     JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Upon consent of the parties (D.E. 16, 35, 37), this case was referred to the undersigned magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 36). See 28 U.S.C. § 636(c).

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently in an Intermediate Sanction Facility in Henderson, Texas, although his complaint concerns events that occurred while he was at the Nueces County Jail in Corpus Christi, Texas. He filed this civil rights action on October 17, 2007, alleging deliberate indifference to his serious medical needs against the "Nueces County Jail Psychiatrist."

A Spears[1] hearing was held on October 26, 2007, following which Dr. Quazi Imam was substituted for the Nueces County Jail Psychiatrist, and service was ordered on Dr. Imam. (D.E. 19). On January 29, 2008, Dr. Imam filed his first amended answer, and raised the defense of qualified immunity. (D.E. 29).

On August 12, 2008, Dr. Imam filed the instant motion for summary judgment. (D.E. 50). Plaintiff has not filed a response in opposition.

## III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of his motion for summary judgment, Dr. Imam offers the following:

Ex. A: Copy of plaintiff's original complaint, plaintiff's October 17, 2007 letter, directed to district court, complaining about medical care at Nueces County Jail, and stating that he is not receiving his medications.

Ex. B(Pt.1): Portions of plaintiff's medical records from Christus Spohn Hospital Memorial, from August and September, 2007; additional jail records;

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

> Ex. B(Pt. 2): Portions of Nueces County Sheriff's records, including arrest records (1-49); Mental disability/suicide intake screening(50-54); visitation and watch records (55-100);
>
> Ex. B(Pt. 3): Records from 2005 arrest and detention.
>
> Ex. B(Pt. 4): Receipts and other records from various detentions.
>
> Ex. C: Affidavit of Dr. Christopher Ticknor, a Board Certified psychiatrist, who has reviewed plaintiff's medical records and Dr. Imam's treatment plan, and concludes that Dr. Imam rendered effective medical care and was not deliberately indifferent when he changed plaintiff's antidepressant and anti-anxiety medication.
>
> Ex. D: Curriculum Vitae of Christopher Ticknor, M.D.

(D.E. 50).

The evidence establishes the following facts:

On August 24, 2007, plaintiff was arrested and taken to the Nueces County Jail. (D.E. 15 at 3).

On August 28, 2007, plaintiff met with Dr. Imam, the jail psychiatrist. (D.E. 50, Ex. B (Pt. 1) at Bates No. 29). Plaintiff told Dr. Imam that he was currently taking three medications to control his bipolar disorder: (1) Lithium; (2) Cymbalta, an antidepressant; and (3) 300 mg. of Trazodone for anxiety. Id. Dr. Imam discontinued the Cymbalta, and reduced by half his dose of Trazodone. Id. He prescribed Lithium, 300 mg. Id. He also ordered lab work to have plaintiff's Lithium blood level checked. Id.

Throughout September, plaintiff complained to the nursing staff that he could not sleep, and that he wanted to discuss his medications with Dr. Imam.[2]  (See D.E. 50, Ex. B (Pt. 1) at Bates Nos. 23, 24, 26, 29, 37, 38, 40, 41, 42, 43, 45, 46), At these times, nursing notes indicate that plaintiff was stable and compliant with his medications.  Id.  Plaintiff's requests were forwarded to Dr. Imam.  Id.

On September 15, 2007, plaintiff submitted an ICF requesting to speak to Dr. Imam about his medications.  (D.E. 50, Ex. B (Pt. 1) at Bates No. 27; see also D.E. 1 at 2).  Notes indicate that plaintiff's behavior was stable, and that he was compliant with his medications.  Id.

On September 24, 2007, Dr. Imam met with plaintiff.  (See D.E. 50, Ex. B (Pt. 1) at Bates No. 22).  Dr. Imam noted that plaintiff had been seen regularly by staff, he denied suicidal ideation, and experienced no ill side effects from the medications.  Id.  Dr. Imam concluded that plaintiff was not having any medication problems, and he continued him on the medications as ordered.  Id.

On September 27, 2007, Dr. Imam saw plaintiff again. (See D.E. 50, Ex. B (Pt. 1) at Bates No. 20).  He found plaintiff stable and noted that he had no medication problems.  Id.  He continued plaintiff on the Lithium and Trazodone.  Id.

---

[2] Plaintiff's complaints were documented in his medical records.  At the Nueces County Jail, the procedure by which an inmate complains to officials is via an Inmate Communication Form ("ICF").  Copies of the corresponding ICFs are also in the plaintiff's medical records.  (See D.E. 50, Ex. B (Pt. 1) at Bates Nos. 35-46).

On September 29, 2007, plaintiff submitted an ICF relating that he had been diagnosed with bipolar disorder ten years ago and had been receiving his medications through Texas MHMR services. (D.E.1 at 3). He complained that Dr. Imam was prescribing him only a mood stabilizer and refusing to see him. Id. The response indicated that the ICF was forwarded to the psych department. Id.

On October 1, 2007, plaintiff was seen by Dr. Imam regarding his medication complaints. (See D.E. 50, Ex. B (Pt. 1) at Bates No. 19). Dr. Imam noted that he was seen by staff regularly and that his behavior was normal. Id. He continued plaintiff on the medications he had ordered. Id.

On October 21, 2007, plaintiff submitted an ICF stating:

> I need my antidepressant medication. Dr. Imam cancelled it when I came to jail almost 2 months ago. I need it reinstated or a suitable substitute. I am having severe depression, anxiety. My 11th request.

(D.E. 50, Ex. B(Pt.1) at Bates No. 36). By response dated that same day, plaintiff was advised: "Mr. Holt, you are already on pysch medication. Seen by Dr. Imam on 10/01/07." Id.

On October 17, 2007, plaintiff filed the instant lawsuit.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## IV.   DISCUSSION

### A.   Qualified Immunity.

Defendant claims entitlement to qualified immunity, and argues that he provided appropriate medical care and rendered it in good faith, such that plaintiff fails to state a constitutional violation. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the

plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id.

The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624. Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

**B.     Deliberate indifference to serious medical needs.**

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001). Dr. Imam contends that plaintiff has failed to establish that he knew of a serious medical need and deliberately ignored or failed to treat that need, and that plaintiff failed to establish that Dr. Imam caused him any harm.

*Step 1 - Constitutional violation.*

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "Deliberate indifference

describes a state of mind more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (construing Estelle, 429 U.S. at 104). To establish an Eighth Amendment violation[3], an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id. at 37.

A mere disagreement with the level and type of treatment is not actionable under the Eighth Amendment. Estelle, 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977). An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999);

---

[3]It is unclear whether plaintiff sued as a pretrial detainee or a convicted detainee, but the Fifth Circuit has held that there is no "constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs, including medical care . . . ." Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1995) (en banc). The Farmer standard of deliberate indifference applies whether an inmate is a pretrial detainee suing under the Due Process Clause of the Fourteenth Amendment or a convicted detainee suing under the Eight Amendment. Id. at 643-50.

Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. Banuelos, 41 F.3d at 235.

*Analysis.*

In his original complaint, plaintiff alleged that Dr. Imam was deliberately indifferent to his serious medical needs because Dr. Imam changed his bipolar medication regime. He argued that he had been on a medication regime consisting of Lithium, Trazodone, and Cymbalta for the last ten years successfully, and that Dr. Imam, without meeting him or discussing the change with him, simply changed the medications, and then failed to follow-up on the impact of the change, and refused to talk to him. However, the uncontested summary judgment refutes plaintiff's claims of deliberate indifference.

In support of his motion for summary judgment, Dr. Imam offers the affidavit of Dr. Ticknor, an expert in mood disorders, who has reviewed plaintiff's medical records and Dr. Imam's treatment of plaintiff and finds that Dr. Imam's "choice of medications and management of plaintiff's bipolar disorder was appropriate and met the standard of care in providing evaluation, diagnosis, documentation, and treatment" during plaintiff's incarceration at Nueces County Jail.[4] (Ticknor Aff't at 4). Dr. Ticknor states that, based on plaintiff's diagnosis of bipolar disorder and history of suicide, Dr. Imam's choice of

---

[4] Dr. Ticknor repeatedly characterizes Dr. Imam's treatment of plaintiff as meeting the "standard of care." (See D.E. 50, Ex. C, Ticknor Aff't at 4, 5, 6, 7, 9). However, "standard of care" as defined in state law medical malpractice cases, exists wholly independent from deliberate indifference to serious medical needs. See Golbert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006).

Lithium, as the primary mood stabilizer medication was appropriate because it, "is the only medication that has been proven to reduce the overall incidence of suicide in Bipolar patients." Id. at 6. Thus, Lithium offered both current and long-term benefits to plaintiff. Id.

Plaintiff objects to Dr. Imam's discontinuation of the antidepressant Cymbalta. However, according to Dr. Ticknor, Cymbalta is not indicated for bipolar patients such as plaintiff. (Ticknor Aff't at 6). It is a known, documented occurrence that antidepressants can trigger manic episodes, and in some cases, precipitate worsening of bipolar depressive symptoms. Id.

In addition, plaintiff has been diagnosed with Hepatitis C. (Ticknor Aff't at 7). With the exception of Lithium, all other medications taken by plaintiff must be metabolized by the liver. Id. The more medications that he takes that must be metabolized by the liver, the greater the risk of liver failure. Id. Thus, Dr. Imam's decision to stop the Cymbalta and prescribe only the Lithium was beneficial to plaintiff's liver health. Id. In addition, Dr. Imam ordered a Lithium serum test to confirm that the dose was at a therapeutic level. Id. at 9.

Moreover, Dr. Imam retained plaintiff on Trazodone which is an antidepressant. (Ticknor Aff't at 7). Dr. Ticknor opines that 100mg of Trazodone was an appropriate dose of medication for plaintiff given his alcoholism, Hepatitis C infection, and a history of taking multiple medications over the years. Id. In addition, plaintiff's medical records as of December 5, 2006 indicated that plaintiff had a good clinical response when he was taking

Trazodone 100 mg, 1 tablet each night, so Dr. Imam replicated this dose successfully in 2007. Id. No adverse effects from this change are evident in the medical records. Id.

Plaintiff's medical records demonstrate that his needs were not ignored or neglected. (See D.E. 50, Ex. B (Pt. 1), at Bates No. ) He was routinely seen and evaluated. He was assessed as stable regarding his bipolar disorder. He was not suicidal, and was not demonstrating adverse side effects from his medicines. In failing to file a response, plaintiff fails to point to any objective evidence to demonstrate that a genuine issue of a material fact issue exists to prevent summary judgment on the questions of whether plaintiff has established a violation of a constitutional right.

### *Step 2 – Objective reasonableness.*

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendants' actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, plaintiff has failed to establish the violation of a constitutional right. Therefore, defendant Imam is entitled to the defense of qualified immunity. Saucier, 533 U.S. at 201.

## V.     CONCLUSION

Dr. Imam has demonstrated that there is no genuine issue of material fact on the question of whether he was deliberately indifferent to plaintiff's serious medical needs, and his right to qualified immunity bars plaintiff's prosecution of this suit. Accordingly, Dr. Imam's motion for summary judgment (D.E. 50) is granted. Plaintiff shall take nothing from Dr. Imam on his claims, which are dismissed with prejudice.

ORDERED this 18th day of November, 2008.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE